**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SHANE WALDROP, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 4:24-cv-321-ALM |
| vs. | § § | |
| CINEMARK USA, Inc., | § § | |
| *Defendant.* | § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this First Amended Class Action Complaint against Defendant Cinemark USA, Inc., based on personal knowledge of his own acts, and upon information and belief:

### I.     NATURE OF THE ACTION

1.     This is a consumer protection action arising from deceptive and improper business practices by Defendant Cinemark USA, Inc., specifically regarding the packaging and serving size of its 24-ounce (oz) drink containers. These plastic drink containers are labeled as "24oz" on the bottom but cannot hold 24 oz of liquid. Defendant markets and sells these drinks at a premium price, despite the containers being physically incapable of holding the advertised amount. Consumers purchase the 24 oz drinks based on the Defendant's representations about their size and value.

2.     Defendant markets and sells these drinks in containers intentionally designed, formed, or filled in a misleading manner to induce consumer purchases, in violation of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 C.F.R. §§ 100 et seq., and state laws prohibiting

1

misbranded food with requirements identical to federal law. Upon information and belief, Defendant sold and continues to sell drinks served in its 24 oz drink containers made, formed, or filled as to be misleading during the class period.

3. The markings on the containers in comparison to the volume of the Products contained in it makes it appear that the Plaintiff and the Class members are buying more than what is being sold. Defendant's employees also misrepresent the size of the containers to consumers at the point of sale.

4. By advertising and promoting 24 oz drinks to Plaintiff and Class members for a moderate price increase of a dollar over the 20 oz drink prices (for Plaintiff: $7.80 vs. $8.80 pre-tax, $8.44 vs. $9.53 after tax), Defendant induces its customers to buy the largest drink size:



5. Despite the advertised value, Defendant's 24 oz drink container only holds 22 oz of liquid and is incapable of providing the marketed and labeled amount of liquid sold.[1]

---

[1] The photograph above is an exemplar menu from one of Defendant's locations. On information and belief, the menus vary between regions. Photos of the locations Plaintiff visited are not available online. However, the drink

6. This is especially misleading because the 24 oz drink should provide a deal for consumers over the 20 oz drink's price: $0.37 per ounce vs. $0.39 per ounce. But due to the actual volume of 22 oz available in the "24 oz" drink, the price is $0.40 per ounce making the larger drink more expensive per ounce, which is not a deal at all.

7. Reliance in this case is presumed because any reasonable purchaser would have relied in substantial part on the representation the drink contained 24 oz of liquid, therefore, justifying the slightly higher price for the large drink. The Plaintiff and the Class members viewed Defendant's misleading product packaging improperly marked as 24 oz and were thereby deceived into buying the drinks at a premium price. The clear plastic packaging (the cup itself) is stamped with a 24 oz marking such that the purchasing consumer sees it before, during, and after purchasing the drink. Thus, the size of the drink is an intertwined component of the transaction such that reliance is presumed.

8. Plaintiff brings this proposed consumer class action on behalf of himself and all other persons nationwide, who from the applicable limitations period up to and including the present ("Class Period"), purchased for consumption, and not for resale, large beer sizes in labeled 24 oz cups from Defendant.

9. During the Class Period, Defendant marketed, and sold 24 oz drinks throughout the United States.

10. Defendant purposefully sold 24 oz drinks in containers made, formed, or filled as to be misleading, as the containers cannot contain 24 ounces.

11. Defendant violated Texas consumer laws, including the Deceptive Trade Practices

---

containers in question that form the basis of this lawsuit are all stamped 24 oz., which the customer sees before, during, and after the transaction. The 24 oz stamp is a warranty Defendant makes to Plaintiff and other consumers before and during the transaction, such that reliance is presumed under Texas law.

Act, a statute designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices, and false advertising.

12. Defendant has deceived the Plaintiff and other consumers nationwide by mischaracterizing the volume of its 24 oz drink containers. Defendant has been unjustly enriched because of its conduct. Defendant has also breached warranties to Plaintiff and other consumers by misrepresenting the quality and characteristics (the size of the drink) before and during the transaction. Accordingly, and as further detailed below, Plaintiff brings claims herein for violations of the Texas Deceptive Trade Practices Act (unconscionability prong), Breach of Express Warranty, Negligent Misrepresentation, Fraud, and an equitable claim for unjust enrichment.

13. Plaintiff's claims are not barred by the doctrine of preemption because courts routinely recognize that state law causes of action are not preempted by the Nutritional Labeling and Education Act (codified as the "FDCA," 21 U.S.C.A. §§ 343 *et seq*.) if they "seek to impose requirements that are identical to those imposed by the FDCA." *Alce v. Wise Foods, Inc.*, 2018 WL 1737750, *4 (S.D. N.Y. 2018) (unreported opinion).

14. Plaintiff's claims are not barred by the doctrine of primary jurisdiction. Courts routinely refuse to apply the doctrine of primary jurisdiction to consumer cases. When U.S. Food and Drug Administration (FDA) policy is clearly established with respect to what constitutes an unlawful or misleading label, the primary jurisdiction doctrine is inapplicable because there is little risk that the courts will undermine the FDA's expertise. *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 189 (S.D. N.Y. 2016).

## II. JURISDICTION AND VENUE

15. The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332, because

this is a class action, as defined by 28 U.S.C.A. § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5 million, excluding interest and costs.

16.     The Court has jurisdiction over the state-law claims because they form part of the same case or controversy under Article III of the United States Constitution.

17.     The Court has personal jurisdiction over Defendant because:

     a.     Defendant's Products are advertised, marketed, distributed, and sold throughout the nation;

     b.     Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in Texas;

     c.     Defendant is authorized to and does business in Texas; and

     d.     Defendant has sufficient minimum contacts with Texas and/or otherwise has intentionally availed itself of the markets in Texas, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

18.     Venue is proper in this District pursuant to 28 U.S.C.A. §§ 1391(a) and(b), because a substantial part of the events giving rise to the Plaintiff's claims occurred in this District, and Defendant is subject to personal jurisdiction in this District.

### III.     PARTIES

19.     Plaintiff Shane Waldrop is, and at all relevant times hereto has been a citizen of Texas.  Plaintiff was exposed to Defendant's product packaging, and, reading its representations, purchased the inappropriately labeled 24 oz drink container for personal consumption within Texas.  Plaintiff bought a 24 oz drink container at Cinemark Tinseltown, Movies 17, Grapevine, Texas 76051, for the price of $8.80 before tax, for a total of $9.53 after tax, and was financially injured because of Defendant's deceptive conduct as alleged herein.  The Product purchased by Plaintiff is substantially similar to all the other packages of Defendant's drink containers, is

similarly packaged and served in misleading containers, and Plaintiff has standing to represent purchasers of all Defendant's 24 oz drink containers. Any reasonable purchaser would have relied in substantial part on Defendant's representations in its advertising and related pricing when making the decision to purchase a 24 oz drink from Defendant. Further, should the Plaintiff encounter Defendant's 24 oz drink containers, in the future, he could not rely on the truthfulness of the packaging, absent corrective changes to the packaging. Yet Plaintiff would still be willing to buy the current formulation of the 24 oz drinks, without the price premium and false representations, so long as Defendant engages in corrective advertising.

20. Defendant Cinemark USA, Inc. is a corporation organized under the laws of Texas with its headquarters at 3900 Dallas Pkwy, Ste 500, Plano, TX 75093-7865. Defendant packaged, distributed, advertised, marketed, and sold 24 oz drinks to thousands of customers nationwide.

## IV. FACTUAL ALLEGATIONS

21. Under the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C.A. § 343(d), a product is considered misbranded if its container is "made, formed, or filled as to be misleading." Texas consumer protection laws and those of other states mirror these federal requirements, prohibiting misleading packaging practices.

22. Defendant owns and operates movie theaters nationwide, all of which feature concession stands selling food and beverages, including draft beer, to paying customers.

23. Defendant advertises two draft beer sizes at its theaters: 20 oz and 24 oz. Both sizes are sold in plastic containers marked with the purported volume, prominently displaying the claimed ounce measurement on each cup.

24.     On February 14, 2024, Plaintiff Shane Waldrop purchased a 20 oz and a 24 oz draft beer from a Cinemark theater in Grapevine, Texas. The beers were served in containers marked as containing 20 oz and 24 oz, respectively:



25.     Plaintiff noticed the 24 oz label on the cup at the time of purchase and after the transaction. Defendant's cashier also explicitly stated that the larger beer was served in a 24-ounce container, further affirming the labeled volume.

26.     During the purchase, Plaintiff observed that the 24 oz container seemed too small to hold the advertised amount. Suspicious of being misled, Plaintiff measured the liquid capacity of the container at home and discovered that it could hold only 22 oz, not the 24 oz represented by Cinemark.  Plaintiff could not have discovered this at the time of purchase.  He could have only discovered the misrepresentation by later performing the liquid capacity test.

27.     Defendant's packaging, labeling, and marketing of the 24 oz drinks are designed to mislead consumers into believing they are receiving the advertised volume, violating state misbranding laws aligned with the FDCA.

28.     Defendant packages, distributes, markets, and sells these 24 oz drinks at theaters nationwide, intentionally using deceptive practices that mislead consumers about the true volume of the product.

29.     Defendant routinely packages these drinks in containers intentionally made and labeled to deceive consumers into believing they are getting more liquid than they receive, causing economic harm to the purchasers.

30.     The size of the container, relative to its actual capacity, was purposefully designed to give the false impression that the consumer is receiving a full 24 oz. This deceptive practice is intended to induce consumers to pay a premium price, believing they are getting a better value than the smaller 20 oz drink.

31.     Reasonable consumers, including Plaintiff and Class members, relied on the container's size labeling when deciding to purchase the 24 oz drink. The visible "24 oz" marking on the clear plastic packaging before, during, and after the purchase intertwined the size representation with the transaction, making reliance on the misrepresentation both reasonable and presumed.

32.     Defendant's labeling of the 24 oz container constitutes a false representation and an express warranty that the container holds 24 oz of liquid. This representation was materially false, and Defendant knew or should have known the cups did not meet the advertised capacity.

33.     Defendant's actions constitute fraudulent and negligent misrepresentations because it falsely conveyed the volume of the product to increase sales, intentionally misleading consumers about the value they were receiving.

34.     Defendant's packaging and pricing scheme misled Plaintiff and Class members into purchasing the drinks under the false belief that the 24 oz size offered better value per ounce compared to smaller sizes, causing financial harm due to overpayment.

35.     Defendant breached express warranties by misrepresenting the product's characteristics, specifically its volume, directly influencing Plaintiff's and Class members' purchasing decisions. Consumers, including Plaintiff, were unaware of and could not reasonably discover the true volume of the 24 oz containers.

36.     The deceptive packaging was a significant factor in Plaintiff's and Class members' decisions to purchase the 24 oz drinks. Defendant's misrepresentations led them to believe they were receiving more product than they were actually sold.

37.     Plaintiff and Class members paid a premium price for the 24 oz drinks based on Defendant's misrepresentations but received less than promised, suffering economic loss as a direct result.

38.     Defendant has unjustly profited from its deceptive and misleading packaging and marketing, deriving significant financial benefit at the expense of deceived consumers.

39.     Plaintiff seeks injunctive relief, actual damages, restitution or disgorgement of Defendant's ill-gotten gains, statutory damages, attorneys' fees, costs, and any other relief the Court deems appropriate to remedy Defendant's unlawful conduct.

## V.     CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of the following class ("Class"):

> **All persons or entities in the United States who made retail purchases of Defendant's 24 oz drinks during the applicable limitations period.**

41.     Because of potential reliance issues on a class-wide basis, Plaintiff also brings an initial sub class for Texas consumers under Texas's Deceptive Trade Practices Act and will include any other subclasses the Court may deem appropriate.

42.     Plaintiff brings the unconscionability arm of Count I of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a sub class ("Texas Sub Class") tentatively defined as:

> **All natural persons who made retail purchases of Defendant's 24 oz drinks in Texas during the applicable limitations period.**

43.     The Class and Texas Sub Class excludes current and former officers and directors of the Defendant, members of the immediate families of the officers and directors of the Defendant, the Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

44.     Plaintiff reserves the right to revise the Class and Texas Sub Class definitions based on facts learned while litigating this matter.

45.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to the Plaintiff at this time and can be determined only through the appropriate discovery, the Plaintiff believes that there are thousands of members in the Class.  Other members of the Class may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice like that customarily used in class actions such as this.

46.     Plaintiff's claims are typical of the claims of the members of the Class and Texas Sub Class as all members of the Class and Texas Sub Class are similarly affected by the

Defendant's wrongful conduct.

47.     The Plaintiff will fairly and adequately protect the interests of the members of the Class and Texas Sub Class in that the Plaintiff has no interests antagonistic to those of the other members of the Class or Texas Sub Class. The Plaintiff has retained experienced and competent counsel.

48.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were unavailable, Defendant would likely unfairly receive hundreds of thousands of dollars or more in improper charges and litigation expenses.

49.     Common questions of law and fact exist as to all members of the Class and Texas Sub Class and predominate over any questions solely affecting individual members of the Class or Texas Sub Class.

50.     The Class and Texas Sub Class are readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

51.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the

potentially inconsistent and conflicting adjudications of the claims asserted here. There will be no difficulty in the management of this action as a class action.

52.    The prosecution of separate actions by members of the Class and Texas Sub Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for the Defendant.

## VI.    CAUSES OF ACTION

### COUNT I
## VIOLATIONS OF DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
(UNCONSCIONABILITY ARM)

53.    Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

54.    Plaintiff brings this claim individually and on behalf of the other members of the Class for violating Texas's Deceptive Trade Practices Act ("DTPA") Tex. Bus. & Com. Code § 17.50(a)(3).

55.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and unconscionable acts by misbranding its 24 oz drinks as seeming to contain more in the packaging than is actually included.

56.    The practices employed by the Defendant, through which the Defendant advertised, promoted, marketed, and sold its 24 oz drinks in misleading containers resulting in Products that are unconscionable and are in violation of the DTPA.

57.    These foregoing deceptive acts and practices were directed at consumers by Defendant with knowledge that the consumers would not know they were being deceived—which is unconscionable. There was no way Plaintiff or the members of the Class could gain sufficient knowledge of the discrepancy at the time of the transaction without performing an experiment as Plaintiff later did at his home. Thus, it was impossible for Plaintiff or the members of the Class to

discover the existence of a misrepresentation, and Defendant took advantage of Plaintiff's and the Class members' lack of knowledge at the time of sale to a gross and unfair degree.

58.    Under the unconscionability arm of the DTPA, Plaintiff is not required to prove Defendant acted with knowledge or intent to deceive Plaintiff. *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998). Plaintiff is also not required to prove he relied on Defendant's unconscionable conduct; he must only prove the dishonest act within the transaction occurred to his detriment. *See Mays v. Pierce*, 203 S.W.3d 564, 572 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

59.    Plaintiff and the other Class Members suffered a loss because of the Defendant's deceptive and unfair trade acts. As a result of Defendant's unconscionable behavior and deceptive and unfair acts and practices, Plaintiff and the other Class Members suffered monetary losses associated with the purchase of Defendant's 24 oz drinks, by receiving less than the capacity of the packaging due to misrepresentations.

## <u>COUNT II</u>
## NEGLIGENT MISREPRESENTATION

60.    Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further allege as follows:

61.    Defendant made false representations, concealment, and nondisclosures to the Plaintiff and the Members of the Class Defendant, through its deceptive packaging of 24 oz drinks makes uniform representations about the product.

62.    To state a claim for a negligent misrepresentation, a plaintiff must show that:

a.    the defendant had a duty, because of a special relationship, to give correct information;

b.    the defendant made a false representation that they should have known was incorrect;

c. the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose;

d. the plaintiff intended to rely and act on it; and

e. the plaintiff reasonably relied on it to their detriment. *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 192 (S.D. N.Y. 2016).

63. The existence of a special relationship between parties depends on whether the person making the representation held or appeared to hold unique or special expertise, whether a special relationship of trust or confidence existed between the parties, and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Id*. at 193.

64. Plaintiff and the Members of the Class and Defendant had a special relationship. Defendant, as the packager, labeler, and initial seller of its 24 oz drinks purchased by the Plaintiff and the Members of the Class, had a duty to disclose the truth about the products and not sell the Products without the advertised amount of liquid. Defendant had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiff and the Members of the Class; Defendant actively concealed material facts from the Plaintiff and the Members of the Class and Defendant made partial representations that are misleading because some other material fact has not been disclosed. Defendant's failure to disclose the information it had a duty to disclose constitutes material misrepresentations and materially misleading omissions that misled the Plaintiff and the Members of the Class, who relied on Defendant in this regard to disclose all material facts accurately and truthfully and fully.

65. The Plaintiff and members of the Class reasonably relied on Defendant's representation that its product packaging contained more product than provided as any reasonable purchaser would have relied in substantial part on Defendant's representations in its advertising and related pricing when making the decision to purchase a 24 oz drink from Defendant.

66. In making the representations of fact to the Plaintiff and members of the described

Class, the Defendant failed to fulfill its duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was the Defendant's negligence.

67. Plaintiff and the members of the Class would have acted differently had they not been misled, as they would not have paid money for Defendant's 24 oz drinks at a premium price.

68. Plaintiff and the members of the Class relied on these false representations and nondisclosures by the Defendant when purchasing its 24 oz drinks, on which reliance was justified and reasonably foreseeable because any reasonable purchaser would have relied in substantial part on Defendant's representations in its advertising and related pricing when making the decision to purchase a 24 oz drink from Defendant.

69. As a direct and proximate result of the Defendant's wrongful conduct, Plaintiff and the members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including, but not limited to, the amounts paid for 24 oz drinks.

## COUNT III
## COMMON LAW FRAUD

70. Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further allege as follows:

71. Defendant intentionally made materially false and misleading representations about the amount of liquid within each container of its 24 oz drinks.

72. Plaintiff and the members of the Class were induced by and relied on—as any reasonable consumer would—the Defendant's false and misleading packaging, representations, and omissions. Plaintiff and the members of the Class did not know then they were purchasing products that did not contain 24 oz of liquid as advertised.

73. The standard of proof of reliance is low under these facts because this case deals with standardized misrepresentations (the size of the large beer container) to a large, perhaps tens

of thousands, number of consumers. Common sense or market-based assumptions about consumer behavior dictate that nearly every purchaser of a 24 oz drink would rely on the idea, not necessarily the strict representation, that the drink would be bigger and a better value per ounce under the circumstances.

74. Though Defendant knew or should have known of its false and misleading labeling, packaging, and misrepresentations and omissions; Defendant still promoted—and encouraged customers to buy—its 24 oz drinks in a misleading and deceptive manner. Had the Defendant adequately disclosed the true amount of liquid in its 24 oz drinks within each package, the Plaintiff and the Class members would not have purchased these products at the stated price.

75. Plaintiff and the members of the Class have been injured because of the Defendant's fraudulent conduct.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

76. Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further allege as follows:

77. Defendant sold size large beers to Plaintiff and members of the Class.

78. Defendant packaged, marketed, and sold the size large beers to Plaintiff and the members of the Class by affirming, promising, and describing the beer containers as capable of holding 24 ounces of liquid. Indeed, the cups were labeled with a stamp stating 24 oz.

79. The representation was made during the bargain because the representation was made before and during the purchase process. At all times during the transaction, the 24 oz. representation is either visible on the menu, visible on the cup itself, or both. In Plaintiff's experience, the sales representative, or cashier, had been trained by Defendant to represent the beer size as 24 ounces.

80.     Reliance in this case is presumed because any reasonable purchaser would have relied in substantial part on the representation the drink contained 24 oz of liquid, therefore, justifying the only slightly higher price for the large drink.  The Plaintiff and the Class members viewed Defendant's misleading product packaging improperly marked as 24 oz and were thereby deceived into buying the drinks at a premium price.  The clear plastic packaging (the cup itself) is stamped with a 24 oz marking such that the purchasing consumer sees it before, during, and after purchasing the drink.  Thus, the size of the drink is an intertwined component of the transaction such that reliance is presumed.  *See* Tex. Bus. & Com. Code § 2.313 cmt. 3.

81.     As demonstrated above, the drink container did not comply with the representation; therefore, Defendant breached its warranty to Plaintiff and the members of the Class.

82.     Plaintiff has notified Defendant of the breach.

83.     Plaintiff and the members of the Class have been injured because Defendant failed to abide by its warranty to Plaintiff and members of the Class.

<u>**COUNT V**</u>
**UNJUST ENRICHMENT**

84.     Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further allege as follows:

85.     Because of the Defendant's deceptive, fraudulent, and misleading labeling, packaging, advertising, marketing, and sales of its 24 oz drinks, Defendant was enriched, at the expense of Plaintiff and members of the Class, through the payment of the purchase price for Defendant's product.

86.     Plaintiff and the members of the Class conferred a benefit on the Defendant through purchasing 24 oz drinks, and the Defendant knew about these benefits and has voluntarily accepted and retained the benefits conferred on it.

87.     Defendant will be unjustly enriched if it is allowed to retain such funds related to the many purchases of its 24 oz drinks, and each Class member is entitled to an amount equal to the amount they enriched the Defendant and for which the Defendant has been unjustly enriched.

88.     Under the circumstances, it would be against equity and good conscience to permit the Defendant to retain the ill-gotten benefits that they received from the Plaintiff, and all others similarly situated, because the volume of the products purchased by the Plaintiff and the Class, was not what Defendant purported it to be by its labeling and packaging.

## VII.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against the Defendant as follows:

a.      For an Order certifying the nationwide Class and Texas Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and the Plaintiff's attorneys as Class Counsel to represent members of the Class;

b.      For an Order declaring the Defendant's conduct violates the referenced statute;

c.      For an Order finding in favor of Plaintiff and the members of the Class;

d.      For compensatory damages in amounts to be determined by the Court and/or jury;

e.      For prejudgment interest on all amounts awarded;

f.      For an Order of restitution and all other forms of equitable monetary relief;

g.      For injunctive relief to repackage Defendant's 24 oz drinks with the proper amount of advertised liquid or as the Court may find proper;

h.      For an Order awarding Plaintiff and the members of the Class their reasonable attorney's fees and expenses and costs of suit; and

i.      For any other relief that the Court deems just and proper.

## VIII.   DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, demands a jury trial on all claims so triable.

Respectfully submitted,

*/s/ Jarrett L. Ellzey*

**ELLZEY & ASSOCIATES, PLLC**
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@ellzeylaw.com
Leigh S. Montgomery
Texas Bar No. 24052214
leigh@ellzeylaw.com
Alexander G. Kykta
Texas Bar No. 24107841
alex@ellzeylaw.com
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**MUNSCH HARDT KOPF & HARR, P.C.**
Eddy L. De Los Santos
Texas Bar No. 24040790
edelossantos@munsch.com
700 Milam Street, Suite 800
Houston, Texas 77002-2806
Phone: (713) 222-4021

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

       I represent that on September 3, 2024, I served all parties with this instrument through the ECF system in satisfaction of the Federal Rules of Civil Procedure.

                               *Jarrett L. Ellzey*
                                Jarrett L. Ellzey