# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| SHANE WALDROP, individually and on behalf of all others similarly situated, § § § § *Plaintiff*, § § v. § § § Civil Action No. 4:24-cv-321 § § CINEMARK USA, INC., § § § *Defendant*. § § § | |

**CINEMARK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO 12(b)(1), RULES 9(b), AND 12(b)(6)**

I.      **Introduction**

Federal courts are not intended to be the forum through which petty disputes are resolved. The jurisdictional limits imposed by Congress were purposefully designed to exclude most cases, including those with only minimal damages claims. Here, Plaintiff's Second Amended Complaint ("SAC") alleged Cinemark shorted him two ounces of beer worth $0.80. Plaintiff further alleged, on mere "information and belief," that "more than 600,000" other patrons were also shorted $0.80 worth of beer. Taking those allegations at face value, Cinemark moved to dismiss the SAC because Plaintiff's own cobbled-together assertions mathematically equated to only $480,000—a figure far below the $5 million jurisdictional floor established by the Class Action Fairness Act ("CAFA").

Faced with this, in his Opposition, Plaintiff attempts to salvage jurisdiction through baseless legal arguments and recharacterizations of his own allegations. Plaintiff first argues he "is entitled to the full amount paid" for the beer rather than the $0.80 worth of beer he claims he was shorted. Opp. [Dkt. 26] at 6. Yet Plaintiff cites *no case law* supporting that novel position— because none exists. As Cinemark showed in its Motion to Dismiss ("MTD"), that type of rescissory damages (for which Plaintiff has not even pleaded) is unavailable as a matter of law. MTD [Dkt. 23] at 6-9. The fact that Plaintiff leads with this wholly unsupported, legally flawed argument speaks volumes.

Plaintiff next resorts to various difficult-to-follow mathematical contortions designed to *quadruple* the number of class members alleged in his SAC. But even so, Plaintiff and his entire inflated class's alleged damages still would not reach the $5 million jurisdictional requirement (1.2 million alleged purchasers x $0.80 x 2 years = $1,920,000 in damages). Recognizing this, the Opposition then asserts—once again, without a single legal citation—that the entire artificially inflated class is entitled to not only a full refund but also treble damages and attorneys' fees—none of which is legally correct. Plaintiff's ever-shifting allegations underscore why allegations

grounded in pure conjecture do not meet the standard of plausibility or good faith required to establish subject matter jurisdiction. As this Court has already held, Plaintiff cannot backfill critical jurisdictional *facts* with his unsupported *beliefs*. Because the very documents on which Plaintiff relies squarely refute his conjecture, and because his own shifting speculations defeat any plausible path to CAFA jurisdiction, the SAC must be dismissed for lack of subject-matter jurisdiction.

Even if CAFA jurisdiction existed (it does not), dismissal would still be appropriate because Plaintiff's substantive allegations—which are unchanged from his prior pleadings—fall short of Rule 9(b)'s heightened pleading standards and/or are foreclosed as a matter of law such that dismissal is appropriate under Rule 12(b)(6). Since Plaintiff already has had three bites at the apple, Cinemark now respectfully requests that the Court dismiss the SAC with prejudice to re-filing in federal court.

## II. The Opposition's Attempt To Artificially Inflate Plaintiff's Alleged Damages Confirms the Deficiency of the SAC's Jurisdictional Allegations

### A. Plaintiff's Claimed Entitlement To a "Full Refund" Is Legally Flawed and Contrary to His Own Allegations

Recognizing that, at $0.80 in damages per class member, Plaintiff will *never* reach the $5 million amount-in-controversy requirement, Plaintiff now summarily declares in the Opposition that each class member is entitled to a full refund. Opp. at 6. Plaintiff fails even to address the case law that Cinemark presented to the Court—law which makes abundantly clear that (i) Cinemark's revenues cannot be equated to Plaintiff's damages, and (ii) there is no basis to award rescissory damages (*i.e.*, a full refund) here. Ignoring those authorities, the Opposition fails to:

- Cite a single legal authority supporting Plaintiff's purported entitlement to a full refund;
- Identify any legal precedent that contradicts Cinemark's cited authorities establishing that a full refund is unavailable as a matter of law;
- Dispute that the SAC does not seek full refund damages or rescission, or allege that such damages remedy would be an appropriate measure of relief;

- Refute that rescission is only available where monetary damages are inadequate—a condition the SAC does not allege; or

- Contest that rescission is precluded by Plaintiff's retention of partial performance.

*See id*. Having offered **no law** to rebut Cinemark's showing, Plaintiff thereby concedes that the appropriate measure of damages is the benefit-of-the-bargain damages alleged in his SAC—*i.e.*, the $0.80 overcharge. *See United States v. Lucio*, 206 F. App'x 348, 349 (5th Cir. 2006).

Thus, if 600,000 people were shorted 2 ounces of beer, as alleged in the SAC, this amounts to $480,000 in damages (600,000 x $0.80 = $480,000). SAC ¶ 16. However, to reach CAFA's $5 million requirement, the SAC needed to plausibly allege that at least 6.25 million people were shorted 2 ounces of beer (6,250,000 x $0.80 = $5,000,000). The SAC made no such allegation.

  B. **The Opposition's "Reworking" of the SAC's Hypotheticals Underscores Their Implausibility**

Recognizing that the SAC did not allege a $5 million controversy, Plaintiff now offers new and often contradictory "facts" to those alleged in his SAC. For instance, Plaintiff's Opposition now argues **1.2 million** people purchased 24-oz beers each year, not the **600,000** people total alleged in his SAC. *Compare* Opp. at 8 ("1.2 million individuals purchase a 24 oz beer per year"), *with* SAC ¶ 16 ("more than 600,000 . . . patrons purchased a 24 oz draft beer during the statutory period"). The Opposition also now asserts—based upon nonsensical interpretations of Cinemark's public filings—that its 24-oz beer revenue was $11,400,000, rather than the $5.4–$5.7 million speculatively alleged in the SAC. *Compare* SAC ¶ 16 ("Defendant earned $5.7 million") *and* SAC ¶ 17 ("Defendant earned $5.4 million") *with* Opp. at 8 (alleging Defendant earned $11,400,000).

To make these new arguments, the Opposition selectively extracts and recombines elements from his two prior hypotheticals—one concerning concession *sales*, the other concession *patronage*. The SAC's concession *patronage* hypothetical speculated that, if 0.3% of 200 million bought 24-oz beers, Cinemark earned $5.7 million in revenue from 600,000 purchasers of 24-oz

- 3 -

beers. SAC ¶ 16. The SAC's concession *sales* hypothetical speculated that, if alcohol represented 10% of Cinemark's overall concession revenue, and 24-oz beers represented 6% of overall alcohol sales (*i.e.*, 0.6%), Cinemark earned $5.4 million in revenue from 24-oz beers. *Id.* ¶¶ 17, 38.

In the Opposition, however, Plaintiff discarded the concession patronage hypothetical's 0.3% (as pleaded in the SAC) and replaced it with the 0.6% from the SAC's concession sales hypothetical. Said differently, the Opposition now applies the 0.6% from the concession sales hypothetical not to revenues, as was done in the SAC, but instead to patrons. Through this arbitrary and unexplained switch, Plaintiff concocted *new* baseless allegations to reach 1.2 million purchasers, rather than the 600,000 purchasers pleaded in the SAC.[1] *See id.* ¶ 16; Opp. at 8.

Plaintiff's attempt to retroactively rework his SAC to establish jurisdiction is not only improper but also underscores the SAC's jurisdictional defects. Regardless of how Plaintiff slices and dices his hypotheticals, the reality remains that (i) Plaintiff's allegations regarding the number of class members remain based overwhelmingly on "information and belief," (ii) Plaintiff's myriad extrapolations from Cinemark's public filings are raw speculation and inconsistent with the plain language of those filings, and (iii) whether Plaintiff alleges that 600,000 or 1.2 million patrons were served "24"-oz beers, Plaintiff simply will not reach the $5 million threshold, as each class member's damages remain a mere $0.80.

### C. Plaintiff's Cited Documents Contradict His Allegations and Make Them Implausible on Their Face

Whether the Court considers Plaintiff's hypotheticals as stated in his SAC or as revised in his Opposition matters not; all are fatally flawed and implausible because they are demonstrably contradicted by the public filings to which Plaintiff's SAC cites. For example, the SAC alleges

---

[1] The Opposition suggests Plaintiff made no such 600,000-person allegation, calling Cinemark's argument "disingenuous" (Opp. at p. 8), but the SAC literally states: "On information and belief, far more than 600,000 (0.3% of 200 million) patrons purchased a 24 oz draft beer during the statutory period." SAC ¶ 16.

that Cinemark earned $900 million in concession sales revenue from "200 million concession patrons." SAC ¶ 16. But, as Cinemark's MTD demonstrated, this 200-million figure represents *global* attendance—not *U.S.* attendance. MTD at 9-10, n.5. And this is not a small difference; as Plaintiff's cited document shows, **Cinemark operates in 14 countries**. *Id.* n.2. Further, the 200 million figure represents global *theatre* attendance, not global or U.S. *concession* patrons. *Id.*

Incredibly, despite explicitly alleging in his SAC that there were "200 million *concession* patrons" (SAC ¶ 16 (emphasis added)), Plaintiff's Opposition now concedes that this allegation was not just implausible, but false. Plaintiff now agrees that the number of concession patrons is not only unknown to Plaintiff but also unknowable from the data to which Plaintiff cited:

> "There is no available data regarding what percent of those 200 million customers purchased alcohol, much less 24 oz draft beers[.]"

Opp. at 7; *accord* Opp. at n.4 ("a percent of revenue is not necessarily an accurate indication of per-person sales"). Undeterred, Plaintiff's Opposition nonetheless urges: (1) alcohol sales are 10% of Cinemark's concession revenue; (2) 24-oz beer sales are 6% of Cinemark's alcohol sales; and thus (3) 1.2 million people bought a 24-oz beer.[2] Opp. at 8. However, even after incoherently swapping elements of both hypotheticals to artificially inflate the number of purchasers alleged in the SAC, the amount in controversy as stated in the Opposition still does not exceed $5 million.

**D.    Even Using the Opposition's Inflated and Speculative Allegations, the Amount in Controversy Remains Below $5 Million**

For all the reasons stated above, the Court should conclude that Plaintiff's artificially

---

[2] To reach his speculative conclusion, the Opposition relies on two *new* documents—which are absent from his SAC—that he purports "describ[e] industry standards": (1) a blog post by an unidentified author; and (2) a CNBC article, "Movie theaters get creative with food and drink as they struggle to fill seats." Opp. at 7. It also relies on new and incorrect tallying of the number of alcoholic options on a menu board that Plaintiff admits he never saw (SAC n.1). *Compare* Opp. at 7 (concluding photo depicts 49 options), *with* SAC ¶ 4 (photo depicting 66 options). Plaintiff's reliance on new documents and theories—many of which are facially contradicted by the very sources he cites—cannot satisfy his burden to plausibly plead facts.

- 5 -

inflated patronage, concession, revenue, and damages figures are implausible and insufficient to establish jurisdiction. But even if Plaintiff's new arguments could confer federal jurisdiction (they cannot), the result is the same: CAFA's $5 million threshold remains unmet. Plaintiff's new 1.2 million purchasers per year for two years, multiplied by $0.80, still amounts to only $1,920,000, as the Opposition concedes. *Id*. at 8-9. In a last-ditch effort to inflate the controversy, the Opposition thus argues Plaintiff may be awarded treble damages and attorney's fees under the DTPA. *Id*. at 9. The Opposition calculates these additions bring the amount in controversy to at least $5,760,000. This last-ditch effort also fails.

First, treble damages are only available for knowing or intentional DTPA violations—and not for any other of Plaintiff's causes of action. DTPA § 17.50(b)(1). In his DTPA cause of action, Plaintiff expressly alleges, "Plaintiff is not required to prove Defendant acted with knowledge or intent." SAC ¶ 66; *accord* Opp. at 13 (alleging same). Without proving Cinemark's knowledge or intent, Plaintiff cannot recover treble damages under the DTPA. DTPA § 17.50(b)(1).

Second, the only consumer protection claim in the SAC is a DTPA claim brought by Mr. Waldrop, a Texas resident, on behalf of a Texas Subclass. SAC ¶¶ 49–50, 62. Yet the Opposition tries to apply treble damages to the entire putative nationwide class without identifying what portion falls within the Texas Subclass. Thus, there is no basis to quantify what portion of the damages could, even hypothetically, be trebled.[3] *See Bruun v. Red Robin Gourmet Burgers, Inc.*, 523 F. Supp. 3d 1228, 1232 (D. Nev. 2021) (concluding—in a case alleging a 2-oz beer shortage—that CAFA's jurisdictional threshold was not met in part because, "the prospect of recovering treble damages in 38% of the states in the nation can't support trebling 100% of the damages").

Third, neither the SAC nor the Opposition puts a number on the attorneys' fees portion of

---

[3] Cinemark operates 312 theatres nationwide, only 88 of which (28%) are in Texas. *U.S. Theatre List*, www.cinemark.com/full-theatre-list (last visited Aug. 28, 2025).

Plaintiff's DTPA claim. So there is likewise no basis for the Court to determine that Plaintiff's fee claim could somehow catapult these $0.80 damages claims to $5 million. *See id.*

As a result, the SAC's speculative and implausible allegations fall far short of satisfying Plaintiff's burden to plausibly allege facts establishing that the $5 million jurisdictional minimum is met. Despite filing this case in September 2024 and having had three opportunities to plead, Plaintiff has yet to present a plausible theory of potentially recoverable damages that even approaches the required threshold. The SAC thus should be dismissed for lack of subject matter jurisdiction, and Plaintiff's request for a ***fourth attempt*** at a viable pleading should be denied.[4]

### III. Plaintiff's Fraud-Based Claims Remain Woefully Insufficient Under Rule 9(b)

As set forth in the MTD, Plaintiff's Fraud-Based Claims do not satisfy Rule 9(b)'s heightened particularity requirements, do not allege actual reliance, are implausible, and do not plead facts showing that the cashier knew the 24-oz cups allegedly held less than 24 ounces. MTD at 14-20. The Opposition does nothing to mitigate these defects.

#### A. Plaintiff Again Failed To Allege Scienter

In its MTD, Cinemark showed that Plaintiff failed to allege scienter—an essential element

---

[4] The Opposition seeks leave to conduct "jurisdictional discovery." Opp. at 9. The Court should reject this request for four reasons. **First,** Plaintiff is not "automatically entitled to conduct discovery to establish subject matter jurisdiction under the CAFA." *Brashear v. Panini Am., Inc.*, 2020 U.S. Dist. LEXIS 264183, at *23 (N.D. Tex. May 21, 2020). To the contrary, "[j]ust as a removing defendant must allege the factual bases for federal jurisdiction in its notice of removal[], Plaintiff[] in bringing this original action must also allege the bases for jurisdiction. Thus . . . Plaintiff[] represented to the court that the case belongs in federal court, and having made this representation, Plaintiffs are no less subject to Rule 11 sanctions than a defendant who removes an action." *Id.* **Second,** Plaintiff has "ma[d]e no effort to identify the discovery sought." *Id.* at *23. **Third,** "[m]ere speculation is not sufficient to support a request for jurisdictional discovery" and is no reason to permit Plaintiff to engage in a belated fishing expedition. *Id.* at *22; *see also Catalyst Medium Four, Inc. v. CardShark, LLC*, 2015 U.S. Dist. LEXIS 38729, at *8 (W.D. Tex. Mar. 26, 2015) (finding a "request for jurisdictional discovery in the hopes it might, with any luck, reveal jurisdiction is a textbook fishing expedition"). **Fourth,** despite filing suit a year ago, Plaintiff chose to conduct no discovery; he cannot claim now—after Cinemark's third Motion to Dismiss—that he needs it. *Brashear*, 2020 U.S. Dist. LEXIS 264183, at *27-28 (refusing jurisdictional discovery because plaintiffs did not request it until after defendant had twice moved to dismiss for lack of CAFA jurisdiction).

of his Fraud-Based Claims. In response, the Opposition cites *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)[5] to argue that Plaintiff's allegation that Cinemark advertised the larger size as a bargain to reap profit "satisf[ies] the pleading standard for scienter, which may be averred generally." Opp. at 12-13. But *Melder* squarely ***rejects*** Plaintiff's argument. The *Melder* plaintiffs alleged defendants committed fraud to inflate prices and increase profits. *Melder*, 27 F.3d at 1102. The *Melder* court held that these allegations "***fail[ed] to plead scienter adequately under Rule 9(b)***" because—although scienter may be averred generally—simply alleging a defendant has a motive to increase profits or possesses fraudulent intent is insufficient. *Id.* (emphasis added). For this reason, and because plaintiffs had "severely distort[ed] the company's public statements in their complaint," the court held that "plaintiffs [did] not merit a third opportunity to replead." *Id.* Cinemark urges this Court to do exactly what the *Melder* court did—to dismiss Plaintiff's SAC and not permit Plaintiff yet another opportunity to replead.

### B.     Plaintiff Again Failed To Allege Reliance

Plaintiff's arguments about alleged reliance have been a moving target. First, in response to Cinemark's Motion to Dismiss the First Amended Complaint ("FAC"), Plaintiff conceded that he did not plead that he relied on the alleged menu board misrepresentation or the alleged cashier's statement. Opp. to MTD FAC [Dkt. 12] ¶ 29 (arguing Plaintiff pleaded reliance "at least as to Defendant's beverage containers"). Second, Plaintiff argued that the cup-bottom stamps "merely support that Defendant was deceiving Plaintiff and its other customers ***after*** they relied on the advertised size." *Id.* (emphasis added). Third, Plaintiff argued that "reliance can be presumed." *Id.* ¶ 3.

---

[5] Plaintiff also relies on *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994). But *Melder* relied on *Tuchman,* noting the *Melder* allegations were "materially indistinguishable from [those] in *Tuchman* where we concluded [the] allegation did not set out facts sufficient to allow for a proper inference of scienter." *Id.*

Plaintiff's Fraud-Based Claims in the FAC and SAC are identical; he did not change one word. Yet when Cinemark again raised Plaintiff's failure to plead reliance in the SAC, Plaintiff's Opposition now offers wholly different rebuttals than those Plaintiff offered before. First, Plaintiff no longer concedes that he did not plead reliance on the menu board or cashier's statement, arguing now that he pleaded reliance on both. *See* Opp. at 10-12. Second, Plaintiff no longer admits that the cup-bottom stamps were not seen and merely support Cinemark's alleged deception. *Id.* at 11. Instead, Plaintiff now argues that he and others may have seen and relied on the cup-bottom stamp before or during purchase. *Id.* Third, although the SAC still alleges that reliance can be presumed (SAC ¶ 33), the Opposition no longer advances this argument but wholly fails to respond to Cinemark's argument that "presumed reliance" is devoid of legal or factual support.

The bottom line is this: Plaintiff cannot plausibly allege, as he previously conceded, that he relied on the menu board pictured in the SAC that he never saw or that all class members relied on the cup stamps because people do not hold cups over their heads to check the stamps before paying. These shifting arguments are nonsense, and the Court should not give them any credence—particularly when viewing reliance through the lens of Rule 9(b)'s exacting requirements.

**IV.   The Opposition Implicitly Concedes that Plaintiff Failed To Plead a Required Element of His Negligent Misrepresentation Claim**

Cinemark moved to dismiss Plaintiff's negligent misrepresentation claim because he failed to allege Cinemark supplied false information to guide him in his business. The Opposition acknowledges this required element but now—without support and for the first time—claims that Plaintiff is in the "'business' of purchasing draft beer" (Opp. at 15), an implausible allegation found nowhere in any of his three Complaints. This new "allegation" is insufficient to rebut Cinemark's showing that the claim must be dismissed. *See Booth v. U.S. Bank, N.A.*, 2024 U.S. Dist. LEXIS 192708, at *20 (Oct. 1, 2024) ("Because the alleged misrepresentation [regarding the

loan made to Booth] was not made for the guidance of Booth in his business, his claim fails.");  *Colbert v. Wells Fargo Bank, N.A.*, 850 Fed. Appx. 870, 876 (5th Cir. 2021) (holding same).

## V.  **Plaintiff Incorrectly Asserts that Unjust Enrichment Is Pleaded in the Alternative**

Even if unjust enrichment were a valid standalone claim (which the weight of Texas law says it is not), Plaintiff's claim would fail because he admits he has adequate remedies at law. Opp. at 16 ("Plaintiff's unjust enrichment claim is properly brought alongside ***Plaintiff's other remedies at law***") (emphasis added). The Opposition incorrectly asserts the claim should survive despite adequate remedies at law, because it is pleaded in the alternative. Opp. at 15-16. But it is not and, regardless, the claim should be dismissed. *See The Indep. Bankersbank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 672 (N.D. Tex. 2014) ("A party can plead legal and equitable claims in the alternative, but only when one party disputes the existence of a contract governing the dispute.").

## VI.  **The Economic Loss Rule Applies**

Cinemark moved to dismiss Plaintiff's negligent misrepresentation and unjust enrichment claims as barred by the economic loss rule. Plaintiff responds that his negligent misrepresentation claim is not barred by the economic loss rule because "[t]he Court has not made a determination on any of Plaintiff's claims, and whether his claims sound in tort or contract law will be determined as the case progresses." Opp. at 15. Plaintiff offers no legal authority to support his contention that the question of whether his claims sound in tort or contract must be deferred until some later date. "Whether the economic loss rule bars [Plaintiff's] tort claims is a question of law." *Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols.*, 954 F.3d 804, 807 (5th Cir. 2020). As such, it is appropriately and routinely applied at the motion to dismiss stage and should be applied here where Plaintiff alleges that a valid contract regarding the transaction existed. *See Indep. Bankersbank*, 13 F. Supp. 3d at 672.

Dated: August 29, 2025

NORTON ROSE FULBRIGHT US LLP

*/s/ Michael A. Swartzendruber*
Michael A. Swartzendruber
michael.swartzendruber@nortonrosefulbright.com
Barton W. Cox
beau.cox@nortonrosefulbright.com
Elizabeth "Ellie" Norris
ellie.norris@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Telephone:   (214) 855-8120
Facsimile:    (214) 855-8200

***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 29, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*/s/ Elizabeth Norris*