# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SHANE WALDROP, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 4:24-cv-321 |
| v. | § § | Judge Mazzant |
| CINEMARK USA, INC., | § § | |
| *Defendant.* | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Cinemark's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rules 12(b)(1), 9(b), and 12(b)(6) (Dkt. #23). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

On February 14, 2024, Plaintiff Shane Waldrop purchased a twenty-four-ounce beer from one of Cinemark USA, Inc.'s movie theaters in Grapevine, Texas (Dkt. #21 at ¶ 21). Skeptical of the cup's capacity, Plaintiff took it home and "perform[ed] [a] liquid capacity test" (Dkt. #21 at ¶ 28). Confirming Plaintiff's suspicion, the test revealed that the container could not hold twenty-four ounces; it could only hold twenty-two (Dkt. #21 at ¶ 28). Consequently, on April 16, 2024, Plaintiff filed a class action lawsuit against Defendant, alleging that the Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) (Dkt. #1). Plaintiff amended his complaint on September 3, 2024 (Dkt. #9).

On September 24, 2024, Defendant moved to dismiss the case pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) (Dkt. #12). On June 24, 2025, the Court denied Defendant's Motion to Dismiss but granted Plaintiff leave to file a Second Amended Complaint to

cure the jurisdictional deficiencies related to the amount in controversy (Dkt. #20). On July 8, 2025, Plaintiff filed a Second Amended Complaint, which added allegations and calculations to support the amount in controversy (Dkt. #21).

Through his Second Amended Complaint, Plaintiff brings claims for (1) violations of the Texas Deceptive Trade Practices Act ("DTPA"), (2) negligent misrepresentation, (3) common law fraud, (4) breach of express warranty, and (5) unjust enrichment (Dkt. #21 at ¶¶ 61–96). On July 29, 2025, Defendant filed this Motion seeking to dismiss Plaintiff's Second Amended Complaint pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) (Dkt. #23). On August 22, 2025, Plaintiff filed his Response in Opposition to Defendant's Motion to Dismiss ("Response") (Dkt. #26). Then, on August 29, 2025, Defendant filed its Reply in Support of Its Motion to Dismiss ("Reply") (Dkt. #27). The Motion is ripe for adjudication.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.

2

1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

## ANALYSIS

Defendant seeks dismissal for (a) lack of subject matter jurisdiction, and (b) failure to state a claim upon which relief can be granted. For the reasons set forth below, the case will be dismissed for lack of subject matter jurisdiction.

## I.     The Amount in Controversy

Defendant argues that Plaintiff's Second Amended Complaint (the "Complaint") fails to satisfy 28 U.S.C. § 1332(d)(2), which requires the amount in controversy to exceed $5,000,000. Plaintiff disagrees, advancing several theories and calculations that he argues satisfy the amount in controversy. Before delving into the arguments, the Court will first address the applicable standard for evaluating Plaintiff's jurisdictional allegations.

The "overwhelming majority of decisions concerning CAFA jurisdiction involve cases removed to federal court by defendants." *Petkevicius v. NBTY, Inc.*, No. 3:14-cv-02616-CAB(RBB), 2017 WL 1113295, at *3 (S.D. Cal. Mar. 24, 2017). Thus, "there is hardly any authority evaluating the existence of CAFA jurisdiction in class actions," like this one, which are "originally

filed in federal court." *Id.* In the absence of controlling authority establishing otherwise, the Court holds Plaintiff "to the same burden for establishing CAFA jurisdiction as it would hold a defendant who removed the case . . . and faced a motion to remand." *Id.* at *4. *Cf. St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("Although most of our caselaw regarding § 1332's amount in controversy requirement has arisen in the context of removal from state to federal court, we find the procedures developed in those cases to be instructive in the converse context of declaratory judgment actions . . . .").[1]

The general rule is that the sum claimed by the plaintiff controls if the claim is "apparently made in good faith." *Id.* (citation modified). Under the good faith standard, dismissal is appropriate only if it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (citation modified). But the "legal certainty test has limited utility—[and] in fact is inapplicable—when the plaintiff has alleged an indeterminate amount of damages." *Id.* (citation modified). "Furthermore, bare allegations of jurisdictional facts have been held insufficient to invest a federal court with jurisdiction." *Id.* (citation modified).

Here, Plaintiff alleges that the amount in controversy "exceeds the sum or value of $5 million" (Dkt. #21 at p. 5). Therefore, he pleads an indeterminate amount of damages, and the legal certainty test does not apply. Instead, the Court must determine if Plaintiff "prove[d] by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." *Id.* To do so, the Court must "first examine the complaint to determine whether it is facially apparent that the claims exceed the jurisdictional amount." *Id.* (citation modified). If it is not

---

[1]  As Plaintiff observes, the Supreme Court has held that "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594–96 (2013)). The Court's rulings do not apply a presumption against federal jurisdiction.

apparent, the Court "may rely on summary judgment-type evidence to ascertain the amount in controversy." *Id.* (citation modified). The facial apparency test concerns "not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands." *Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 862 (5th Cir. 2010) (per curiam) (unpublished) (citing *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)). Moreover, the "speculative valuation of a claim does not constitute satisfactory evidence of the amount in controversy and will not satisfy *St. Paul Reinsurance*'s more-likely-than-not test." *Savage v. Hill Cnty. Pawn*, No. 6:18-CV-00043-ADA, 2018 WL 7377622, at *2 (W.D. Tex. Oct. 10, 2018) (citing *Brooks v. Wells Fargo Bank, N.A.*, No. 3:15-CV-245, 2015 WL 390674, at *3–4 (N.D. Tex. Jan. 29, 2015)).

To engineer a path to jurisdiction, Plaintiff offers the Court a series of mathematical exercises (*See* Dkt. #21 at ¶¶ 16–17; Dkt. #26 at pp. 5–9). These calculations rely on layered assumptions and do not plausibly allege the amount in controversy. As a result, Plaintiff fails to "explain[] plausibly" how the stakes of the litigation exceed $5 million. *Berniard*, 481 F. App'x at 862 (citing *Spivey*, 528 F.3d at 986).

### A.    Plaintiff's allegations regarding class size are speculative.

The Court previously held that "Plaintiff has not stated—or otherwise 'ballparked'—how many individuals will make up the class," limiting the Court's ability to assess the plausibility of the amount in controversy (Dkt. #20 at pp. 6–7).[2] Plaintiff now provides several calculations to remedy this deficiency (*See* Dkt.  #21 at ¶¶ 16–17; Dkt. #26 at pp. 5–9). None are successful.

---

[2] In *Smith v. American Pain & Wellness, PLLC*, 747 F. Supp. 3d 989, 999 (E.D. Tex. 2024), this Court held that plausible allegations about class size helped provide adequate support for the CAFA's amount in controversy. In its prior order in this case, the Court held that Plaintiff failed to provide a viable class-size estimate (Dkt. #20 at p. 7).

First, relying on Defendant's reported "over $900 million in revenue from concession sales" from 2024 public filings and "[a]ssuming an average price of $9.50 for a 24 oz beer," Plaintiff alleges that if "0.3% of the reported 200 million concession patrons purchased a 24 oz draft beer, Defendant earned $5.7 million" in revenue (Dkt. #21 at ¶ 16). Plaintiff further asserts that, based "[o]n information and belief, far more than 600,000 (0.3% of 200 million) patrons purchased a 24 oz draft beer" (Dkt. #21 at ¶ 16). Plaintiff does not explain why he assumes that 600 thousand out of 200 million concession patrons purchased beer—let alone twenty-four ounces of it. *See Brashear*, 2020 WL 13413474, at *5 (holding that CAFA plaintiffs failed to sufficiently explain the assumptions supporting their amount in controversy calculations).

Nor does Plaintiff explain why the Court should entertain the 200 million figure in the first place. The 2024 Press Release that Plaintiff cites in his Complaint contains appears to address "worldwide" data, and the 200 million figure refers to "moviegoers"—not concession patrons.[3] Nothing in the Complaint plausibly supports an inference regarding how many moviegoers—at least some of whom purchased no concessions at all—purchased a twenty-four-ounce beer. Such a conclusion would require the Court to make "unreasonable inferences about the amount in controversy" and be "much too speculative." *See Bell v. Cal-Maine Foods, Inc.*, No. 23-50112, 2024 WL 550325, at *2 (5th Cir. Feb. 12, 2024) (per curiam) (unpublished) (affirming dismissal of CAFA case under Rule 12(b)(1) and 12(b)(6) because the plaintiffs made "mathematic inferences" that "unreasonably skew[ed]" the amount in controversy).

---

[3]  CINEMARK HOLDINGS, INC., CINEMARK HOLDINGS, INC. REPORTS FOURTH QUARTER AND FULL YEAR 2024 RESULTS AND REINSTATES DIVIDEND 1 (2025), https://d1io3yog0oux5.cloudfront.net/_e428a30f8633695b32ad0 51ef904e999/cinemark/news/2025-02-19_Cinemark_Holdings_Inc_Reports_Fourth_Quarter_and_612.pdf.

In his Response (not the Complaint), Plaintiff alleges that "1.2 million individuals purchased 24 oz beer per year" (Dkt. #26 at p. 13). To reach this figure, Plaintiff combines his earlier assumptions and reasons as follows: 10% of the 200 million individuals who attend Defendant's theaters purchase concessions, and 6% of those concession purchasers specifically bought a twenty-four-ounce beer (Dkt. #26 at p. 13). Originally, in the Complaint, Plaintiff applied these percentages to Defendant's reported $900 million in concession revenue (Dkt. #21 at ¶ 17). Plaintiff now applies those same percentages to worldwide theater attendance (Dkt. #26 at p. 13). These shifting calculations only underscore the speculative nature of Plaintiff's theory. Plaintiff's live pleading alleges that the class consists of "far more than 600,000" individuals, but he asks the Court to inflate this amount to 1.2 million in the Response (Dkt. #21 at ¶ 16; Dkt. #26 at p. 13). Subject matter jurisdiction cannot be "based on pure conjecture," so these estimates fail to carry Plaintiff's burden. *See Brashear*, 2020 WL 13413474, at *6; *see also Diefenthal v. C. A. B.*, 681 F.2d 1039, 1052 (5th Cir. 1982) ("[A] court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying injury.").

### B.       The measure of damages limits the amount in controversy.

Even accepting Plaintiff's proposed class sizes, the proposed class damages cannot plausibly exceed $5,000,000. The gravamen of the Complaint is that consumers allegedly received two fewer ounces of beer than promised (Dkt. #21 at ¶ 6). Plaintiff responds, without authority, that class members are entitled to a full refund of the beer (Dkt. #26 at p. 11). Defendant argues that no viable legal theory would entitle class members to a full refund, since the class members received the benefit of at least twenty-two ounces (Dkt. #23 at pp. 15–16).

In *Garza v. Nestle USA, Inc.*, 693 F. Supp. 3d 903, 909 (N.D. Ill. 2023), the Northern District of Illinois considered whether the CAFA's amount in controversy was satisfied in a

7

deceptive labeling case. The court reasoned that, unless the product at issue was "virtually worthless," recovery would be limited to "the price paid minus the value received." *Id.* at 910. Because the plaintiff was not entitled to full refunds, the $5,000,000 amount in controversy was unsatisfied. *Id.*

Like the plaintiff in *Garza*, Plaintiff here does not allege that a twenty-two-ounce beer is "worthless," but that it "was worth *less* than class members paid." *Id.* Without authority supporting Plaintiff's contention that the class could recover a full refund under these circumstances, the Court cannot rely on the aggregate amount of full refunds to determine the amount in controversy. *See id.* at 911 (dismissing the case after finding that no legally permissible theory would allow recovery over $5,000,000); *see also Bruun v. Red Robin Gourmet Burgers, Inc.*, 523 F. Supp. 3d 1228, 1231 (D. Nev. 2021) (holding that the CAFA's amount in controversy related only to "the two ounces of beer that Red Robin promised but did not deliver." (citation modified)).

The Complaint alleges that two ounces make a difference of $0.80 cents in value (Dkt. #21 at p. 3). So, to satisfy the amount in controversy, Plaintiff would need to plausibly allege that at least 6.25 million consumers were shorted two ounces of beer when purchasing the twenty-four-ounce beer.[4] At best, Plaintiff alleges a class size of 1.2 million consumers (Dkt. #26 at p. 13). Plaintiff therefore cannot satisfy the amount in controversy by relying on actual damages.

To escape this result, Plaintiff responds that the amount in controversy may exceed $5 million if attorney's fees and treble damages under the DTPA are included (Dkt. #26 at p. 14). Generally, penalties, statutory damages, punitive damages, and attorney's fees available by statute or contract are included in ascertaining the amount in controversy. *Brashear*, 2020 WL 13413474,

---

[4]   6,250,000 × $0.80 in damages (representing the alleged value of two ounces of beer) = $5,000,000.

at *6 (citing *St. Paul Reinsurance Co.*, 134 F.3d at 1253). But the "limited allegations in the [Complaint] make[] it impossible to estimate with any degree of certainty the amount of attorney's fees," and the Court is "not convinced that any such award, even if generous, would result in an aggregated damage amount that comes close to exceeding $5,000,000 as required . . . under the CAFA." *Brashear*, 2020 WL 13413474, at *6.

Plaintiff's treble-damages pitch fares no better. The DTPA permits treble damages only if the plaintiff proves that the defendant acted knowingly—and economic and mental anguish damages may be trebled only if the prohibited conduct was intentional. *Beasley v. Liberty Ins. Corp.*, No. 3:10-CV-631-M, 2010 WL 2697151, at *2 (N.D. Tex. July 7, 2010) (citing TEX. BUS. & COM. CODE § 17.50(b)(1)). But in the DTPA section of his Complaint, Plaintiff takes the position that he "is not required to prove Defendant acted with knowledge or intent" (Dkt. #21 at ¶ 66). Even assuming he did plead knowledge and intent, Plaintiff only asserts DTPA claims on behalf of a Texas subclass (Dkt. #21 at p. 12). Defendant operates 312 theatres nationwide, only 28% of which are located in Texas (Dkt. #27 at p. 6 n.3). This further whittles down the potential damages the Court may consider when determining the amount in controversy. *See Red Robin*, 523 F. Supp. 3d at 1232 (holding that the CAFA's jurisdictional threshold was not met in part because "the prospect of recovering treble damages in 38% of the states in the nation [cannot] support trebling 100% of the damages"). Here, no basis exists for the Court to conclude that treble damages get Plaintiff close to exceeding the $5,000,000 amount in controversy.

\* \* \*

In short, Plaintiff's speculative assumptions and calculations arguably address "what the stakes of litigation *could* be," but not "what they *are* in light of the [Plaintiff's] [actual] demands." *Berniard*, 481 F. App'x at 863. Dismissal is therefore required.

9

## II.    Jurisdictional Discovery

In his Response, Plaintiff seeks leave to conduct jurisdictional discovery related to the amount in controversy.[5] The request will be denied.

"[S]ome jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact." *In re MPF Holdings U.S. LLC*, 701 F.3d 449, 457 (5th Cir. 2012). The decision to grant jurisdictional discovery, however, is discretionary. *Flores v. Pompeo*, 936 F.3d 273, 276 n.3 (5th Cir. 2019) (concluding that the district court did not abuse its discretion in ruling on a Rule 12(b)(1) motion without allowing the plaintiff who filed the action to conduct jurisdictional discovery). "[T]he party opposing dismissal and requesting discovery . . . bear[s] the burden of demonstrating the necessity of discovery." *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013). "Mere speculation is not sufficient to support a request for jurisdictional discovery." *Brashear*, 2020 WL 13413474, at *7 (citing *NL Indus., Inc. v. OneBeacon Am. Ins. Co.*, 435 F. Supp. 2d 558, 566 (N.D. Tex. 2006)).

Here, the Court finds that Plaintiff offers no viable basis for jurisdictional discovery. As the Court has already explained, Plaintiff's "assertion that the aggregated claims of the proposed class members exceed the sum or value of $5,000,000 is based purely on conjecture and speculation." *Id.* at *7. And, like the plaintiff in *Brashear*, Plaintiff did not request jurisdictional discovery "until *after* [Defendant] moved the *second* time to dismiss this action under Rule 12(b)(1)." *Id.* at *8. Plaintiff filed suit almost two years ago, and "delayed unnecessarily, without explanation," to seek jurisdictional discovery now. *Id.* The request for jurisdictional discovery is therefore denied.

---

[5]   The Court does not reach Plaintiff's request to file another amended complaint because he only requests leave to amend in relation to the Rule 9(b) and Rule 12(b)(6) challenges (See Dkt. #26 at p. 21).

## CONCLUSION

It is therefore **ORDERED** that Cinemark's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rules 12(b)(1), 9(b), and 12(b)(6) is (Dkt. #23) is hereby **GRANTED**.

It is further **ORDERED** that Plaintiff's claims against Defendant are hereby **DISMISSED without prejudice**. The Clerk is directed to **CLOSE** this case.

The Court will issue a separate final judgment.

**IT IS SO ORDERED.**

 **SIGNED this 19th day of March, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE